### 46481. GUNN et al. v. BOOKER.
(381 SE2d 286)

BELL, Justice.

This appeal stems from a boating accident, and raises, inter alia, issues concerning the constitutionality of OCGA § 51-1-22 and concerning the application of the doctrine of negligent entrustment to the facts of this case. The trial court held the statute unconstitutional, and held that the doctrine of negligent entrustment does not apply to the facts of this case. We reverse the trial court's ruling on the constitutionality of the statute, but affirm its ruling regarding negligent entrustment.

The plaintiff-appellants, Brenda and Bob Gunn, were injured in a July 4, 1985, motorboat accident off Wilmington Island. The boat was owned by the defendant-appellee, Steve Booker, and was operated during the accident by his brother, defendant Joe Booker. Earlier that day, Steve, Joe, Brenda, and others boated from Wilmington to Little Tybee Island for a picnic. Steve drove his boat to the picnic site. The evidence is in conflict about who drove Steve's boat back from Little Tybee; Brenda says that Joe drove because Steve was intoxicated, but Steve and Joe say that Steve piloted. There is some evidence that after the group returned to Wilmington, Steve and Joe took Steve's boat back out. According to one witness, they alternated driving and "t[ore] up the river." However, Steve says that he moored the boat after returning from Little Tybee, and that he left the dock area without going back out in the boat. It is undisputed that after Steve left the Wilmington dock, Joe took Brenda and Bob for a ride in Steve's boat, at Brenda's suggestion. During the ride Brenda and Bob were thrown from the boat. According to Bob, although Joe had been drinking some during the day, Joe was not intoxicated at the time. It is undisputed that Steve had not given Joe express permission to use the boat. However, Steve now says that he would not have objected, and Joe says that at that time he believed Steve would not have objected.

Brenda and Bob sued Steve, Joe, and others for damages; Steve was sued under theories of statutory vicarious liability, OCGA § 51-1-22, and negligent entrustment, see *Thomason v. Harper,* 162 Ga. App. 441 (289 SE2d 773) (1982). Steve moved for summary judgment on

both claims, and the court granted the motion. Concerning § 51-1-22, the court ruled that the statute has two prongs, and that the first prong is like the family-purpose doctrine in that it presumes that a member of the owner's "immediate family" has the owner's consent to use the boat. The court interpreted "immediate family" to mean members of the owner's household. The court then concluded that the Gunns could not benefit from this presumption, because Joe, a resident of Florida, was not part of Steve's household (Steve resides in Georgia). The court opined that the other prong of § 51-1-22 imposes vicarious liability on an owner who has impliedly or expressly consented to the boat's use. The court said that this prong was broader than the family-purpose doctrine, because it may apply regardless of the relationship between owner and boat operator. Pretermitting the question of consent, the court held that imposing liability on Steve without fault under the second prong would violate due process and equal protection. The court concluded that the Gunns could not "prevail in an action brought under that part of OCGA § 51-1-22 which exceeds the closely defined parameters of the family purpose doctrine."[1]

With respect to negligent entrustment, the court held that the plaintiffs had to show that Steve entrusted the boat to Joe with actual knowledge that Joe was incompetent because of (1) age or inexperience, (2) physical or mental condition, or (3) habitual recklessness. The court concluded that the first category was inapplicable; that there was no evidence that Joe appeared to be mentally or physically impaired; and that there was no evidence of a "general practice" or "behavior pattern" of recklessness by Joe.

The Gunns appeal the grant of summary judgment to Steve.[2]

1. We will first address the Gunns' contention that the trial court erred in holding that OCGA § 51-1-22 is unconstitutional.

OCGA § 51-1-22 provides as follows:

> The owner of a vessel shall be liable for any injury or damage occasioned by the negligent operation of the vessel, whether the negligence consists of a violation of the statutes of this state or of neglecting to observe such ordinary care in such operation as the rules of common law require. The owner shall not be liable, however, unless the vessel is being used with his or her express or implied consent. It shall be pre-

---

[1] Apparently, the trial court considered OCGA § 51-1-22 constitutional only to the extent the consent to use the boat is given to a member of the owner's household. From the trial court's ruling, we cannot discern whether the court would also impose other aspects of the family-purpose doctrine on § 51-1-22 (e.g., that the family member is using the boat for a family purpose), see *Phillips v. Dixon*, 236 Ga. 271, 275 (223 SE2d 678) (1976).

[2] This appeal does not involve Joe Booker or any other defendant.

sumed that the vessel is being operated with the knowledge and consent of the owner if, at the time of the injury or damage, the vessel is under the control of his or her spouse, father, mother, brother, sister, son, daughter, or other immediate member of the owner's family.

Under § 51-1-22, the owner's liability is predicated entirely upon the owner's consent to the use of the boat. Such owner-consent statutes have been enacted with regard to automobiles and boats and have several salutary purposes. They protect injured plaintiffs from irresponsible, judgment-proof drivers; they place the financial burdens created by irresponsible drivers on the car's or boat's owner, who can best protect himself from the loss by purchasing insurance and who has set in motion the events leading up to the injury by giving consent to the driver; and they discourage owners from lending their automobiles or boats to reckless drivers. E.g., *Prosser and Keeton*, The Law of Torts, Ch. 12, § 73, pp. 522-523, 527-528 (5th ed. 1984); 7A AmJur2d 899, Automobiles and Highway Traffic, § 666; *Harper and James*, The Law of Torts, Ch. XXVI, §§ 26.5 and 26.16 (Vol. 5 1986); Comment, *The Owner Consent Statutes: The Distinctions Between Enterprise and Instrumentality Liability*, 31 U. Chi. L. Rev. 355, 364 (1964); *Roberts v. Posey*, 194 NW2d 310 (Mich. 1972); *Burton v. Gardner Motors*, 172 Cal. Rptr. 647 (117 Cal.App.3d 426) (1981); *Levy v. Daniels' U-Drive Auto Renting Co.*, 143 A 163, 164 (2) (Conn. 1928); *Bridgeford v. U-Haul Co.*, 238 NW2d 443, 446-449 (Neb. 1976).

Moreover, owner-consent statutes are not codifications of the family-purpose doctrine; instead, they go further than the family-purpose doctrine and render an owner of an automobile or boat liable for injuries to third persons caused by the operator of the boat or car, regardless of whether the driver is a member of the owner's family or not, so long as the owner has given the operator his consent. See *Prosser and Keeton*, supra at 527; *Comment*, 31 U. Chi. L. Rev., supra at 355.

With regard to automobiles, owner-consent statutes have been held constitutional, because, as previously noted, such statutes serve several valid state purposes, and are based upon the owner's consent to use the vehicle. See, e.g., *Prosser and Keeton*, supra, 527-528; *Harper and James*, supra, § 26.16; 7A AmJur2d, supra at § 666; *Bridgeford v. U-Haul Co.*, supra, 238 NW2d at 446-449; *Levy v. Daniels' U-Drive Auto Renting Co.*, supra, 143 A at 164.[3] Although we

---

[3] Accord *Stapleton v. Independent Brewing Co.*, 164 NW 520, 521 (1, 2) (Mich. 1917); *Atkins v. Hertz Drivurself Stations, Inc.*, 185 NE 408 (3, 4) (N.Y. 1933); *Sutton v. Tanger*, 1 P2d 521 (Cal. 1931); *Holmes v. Lilygren Motor Co.*, 275 NW 416, 419 (7) (Minn. 1937);

have found no cases addressing the constitutionality of such statutes with regard to boats, we find the reasoning of the owner-consent automobile cases to have equal application to boats, and therefore hold that the trial court erred in holding § 51-1-22 unconstitutional.

2. We also find it necessary to address the trial court's discussion of the presumption language contained in § 51-1-22. The trial court, relying on the presumption language, held that § 51-1-22 embodied the family-purpose doctrine. As noted above, however, owner-consent statutes, including § 51-1-22, do not codify the family purpose doctrine.[4] The presumption found in § 51-1-22 is merely an evidentiary tool to aid a plaintiff in proving consent.

Moreover, we find that the court erred by ruling that the Gunns are not entitled to the benefit of this presumption. OCGA § 51-1-22 raises a presumption in the event that a "spouse, father, mother, brother, sister, son, daughter, or other immediate member of the owner's family" is driving the boat. We are required to give statutory language its natural and ordinary meaning. OCGA § 1-3-1 (b). We find that we would be straining the presumption language of § 51-1-22 to apply it only to members of an owner's household. The presumption language is clearly broader than that, and if the General Assembly had wished to so confine the presumption, it could easily have done so.

We therefore hold that the Gunns are entitled to a presumption that Joe Booker was operating the boat with Steve's permission.

3. We now turn to the Gunn's contention that the trial court erred in granting summary judgment to Steve Booker on their claim that Steve negligently entrusted his boat to Joe. Summary judgment is proper only when there is no genuine issue as to any material fact

---

*Robinson v. Bruce Rent-A-Ford Co.*, 215 NW 724, 726 (6) (Iowa 1927). Cf. *Young v. Masci*, 289 U. S. 253 ( 53 SC 599, 77 LE2d 1158) (1933); *Phillips v. Dixon*, 236 Ga. 271, 275 (223 SE2d 678) (1976). In *Phillips*, we addressed a similar contention regarding the family-purpose doctrine. There, Dixon sought to hold Phillips liable for injuries she sustained when involved in a collision with Phillips' family car. Phillips had given his son permission to drive the car, but told him not to let anyone else drive it. Phillips' son, however, did let a third party drive the car, and that person was driving when the collision occurred. Phillips contended that to hold him liable under these facts was unconstitutional, since he did not consent to the third-party driving the car. We disagreed, holding that

> [o]nce the owner has consented to the use of the vehicle for a family purpose and has relinquished control of the car to a family member . . ., the requirements of due process are satisfied. The car is not being used by a trespasser without the knowledge and consent of the owner, as was condemned in *Frankel* [*v. Cone*, 214 Ga. 733 (107 SE2d 819) (1959)].

[4] In Georgia, the application of the family-purpose doctrine to boats is accomplished by OCGA § 51-1-21 (b), which provides as follows:

> The owner of a watercraft shall be liable for any tort caused by the operation of the watercraft, in the same manner and to the same degree as the owner of an automobile is liable for torts caused by its operation.

In this regard see *Wallace v. Lessard*, 248 Ga. 575, 576, fn. 2 (285 SE2d 14) (1981).

and the moving party is entitled to judgment as a matter of law. OCGA § 9-11-56 (c).

Under the doctrine of negligent entrustment, a party is liable if he entrusts someone with an instrumentality, with actual knowledge that the person to whom he has entrusted the instrumentality is incompetent by reason of his age or inexperience,[5] or his physical or mental condition, or his known habit of recklessness. *Thomason v. Harper*, supra, 162 Ga. App. at 444-445 (2); *Ballew v. Riggs*, 244 Ga. 232, 235 (259 SE2d 482) (1979); *Gill Plumbing Co. v. Macon*, 187 Ga. App. 481, 482-484 (2) (370 SE2d 657) (1988).

We will first examine whether Steve had actual knowledge that Joe was incompetent to drive the boat due to intoxication. Although the record shows that Joe had been drinking some alcohol during the course of the day, both Brenda and Bob Gunn testified that they felt safe getting in the boat with Joe. Moreover, Bob testified that Joe was not intoxicated and was "perfectly in control of himself," and Brenda testified that while at Little Tybee Island she felt only Steve was intoxicated. There was no testimony that Steve knew Joe was intoxicated or knew that Joe was incompetent to handle the boat due to intoxication.

We now turn to whether Steve had actual knowledge of any habitual recklessness by Joe. In this regard, the only evidence to support this aspect of negligent entrustment is the testimony of one of the other boaters that Steve and Joe were tearing up the river when they took the boat out by themselves. However, one is only negligent in entrusting a boat to someone if the person to whom the boat is entrusted has a known habit or pattern of reckless driving. *Thomason v. Harper*, supra, 162 Ga. App. at 444-445; *Gill Plumbing Co. v. Macon*, supra, 187 Ga. App. at 482-483. Here, the testimony regarding Joe and Steve tearing up the river is insufficient as a matter of law to show that Steve had actual knowledge of a pattern or habit of recklessness by Joe.

Based on the foregoing, we conclude that the trial court did not err in granting summary judgment to Steve on the Gunn's negligent entrustment claim.

*Judgment affirmed in part and reversed in part. All the Justices concur, except Hunt, J., not participating.*

DECIDED JULY 13, 1989.

*Joseph B. Bergen, Frederick S. Bergen,* for appellants.

---

[5] It is undisputed that Joe's age and experience rendered him competent to drive the boat.

*Paul W. Painter, Jr., Frank W. Seiler, Joseph H. Barrow, A. Mark Lee,* for appellee.